UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RENZO DAVID CANIZALEZ POLANCO,

              Petitioner,

v.

UNKNOWN PARTY #1 et al.,

              Respondents.

_____/

Case No. 1:26-cv-747

Hon. Hala Y. Jarbou

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the Florence Detention Center in Florence, Arizona, initiated this action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will dismiss Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

## Discussion

### I.      Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.3.)

In an order entered on March 9, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 3.) Respondents filed their response on March 12, 2026. (ECF No. 4.)

## II.    Factual Background

Petitioner is a native and citizen of Venezuela. (2023 Notice to Appear (NTA), ECF No. 1-5, PageID.25.) Petitioner entered the United States on or about June 22, 2023, at a port of entry in Brownsville, Texas. (*Id.*; 2023 Form I-213, ECF No. 4-1, PageID.60.) At that time, Department of Homeland Security (DHS) issued Petitioner a Form I-862, NTA, charging Petitioner with inadmissibility under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner is an immigrant "who, at the time of application for admission, is not in possession of a valid unexpired [immigration or travel document]." (2023 NTA, ECF No. 1-5, PageID.25, 31.) Petitioner was then paroled into the United States under 8 U.S.C. § 1182(d)(5)(A), until June 20, 2025. (Form I-94, ECF No. 1-2, PageID.12 (indicating that Petitioner's "Class of Admission" is "DT"[1]).)

---

[1] *See* United States Citizenship and Immigration Services Guidance Website, https://www.uscis. gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies (under "Non-Categorical Parole" heading, select "What does 'Non-Categorical Parole' mean?") ("Aliens who are outside of the United States may request to be paroled into the United States based on urgent humanitarian reasons or a significant public benefit. These aliens are not paroled into the United States under a categorical parole program or process. Often, the Class of Admission (COA) for these aliens is 'DT' though other parole related COAs may have been used.").

Petitioner applied for and was granted Temporary Protected Status (TPS)[2] from October 10, 2024, to April 2, 2025.[3] (TPS Approval Notice, ECF No. 1-2, PageID.10.)

DHS moved to dismiss the removal proceedings against Petitioner, and the Detroit Immigration Court granted that motion on June 30, 2024. (Order on Motion to Dismiss, ECF No. 4-3, PageID.65.) On December 10, 2024, Petitioner filed an application for asylum and withholding of removal with United States Citizenship and Immigration Services. (Receipt Notice, ECF No. 1-4, PageID.20; Pet., ECF No. 1, PageID.2.)

---

[2] Under 8 U.S.C. § 1254a, the Secretary for the Department of Homeland Security

> may designate a foreign state for TPS when nationals of that state cannot return there safely due to armed conflict, natural disaster, or other "extraordinary and temporary conditions," unless the Secretary "finds that permitting the [noncitizens] to remain temporarily in the United States is contrary to the national interest of the United States."

*Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1010 (9th Cir. 2025) (quoting 8 U.S.C. § 1254a(b)(1)(C)). "Such a designation permits certain nationals of the foreign state, who have continuously resided in the United States since the effective date of the designation, to register for employment authorization and protection from deportation for the duration of the TPS period." *Id.* (quoting 8 U.S.C. § 1254a(a)(1), (b)(2)). Additionally, there are other restrictions, including, for example, that applicants for TPS "must not have been 'convicted of any felony or 2 or more misdemeanors committed in the United States.'" *Id.* (quoting 8 U.S.C. § 1254a(c)(2)(B)(i)). Further, "TPS does not provide beneficiaries with a pathway to permanent resident status, nor does it include any right to petition for visas on behalf of family members in the United States or abroad." *Id.*

With respect to TPS for Venezuela, "[o]n January 17, 2025, Secretary Mayorkas extended the 2023 [TPS] Designation by eighteen months, through October 2, 2026." *Nat'l TPS All. v. Noem*, 166 F.4th 739, 751 (9th Cir. 2026) (footnote and citation omitted). "The extension was set to become effective on April 3, 2025," the day after the 2023 TPS Designation was due to expire. *Id.* (citation omitted). "On January 24, 2025, DHS began drafting the decision to vacate the TPS extension" for Venezuela. *Id.* Thereafter, on January 26, 2025, "DHS began drafting a termination of Venezuela's TPS." *Id.* On January 28, 2025, Secretary Noem signed off on the decision to vacate the January 17, 2025, extension of TPS for Venezuela, meaning that the 2023 TPS Designation for Venezuela effectively expired on April 2, 2025. (*Id.*) Subsequently, on February 1, 2025, "Secretary Noem signed off on the termination [of TPS]" for Venezuela. *Id.* (citation omitted). Secretary Noem did not terminate the 2021 TPS Designation for Venezuela, however, the 2021 TPS Designation "had only been extended to September 10, 2025." *Id.* (citation omitted).

[3] There is no indication in the record before the Court that Petitioner filed an application to renew his TPS when it expired on April 2, 2025.

On January 12, 2026, ICE agents encountered and arrested Petitioner while Petitioner was driving his daughter to school. (Appeal, ECF No. 1-6, PageID.38.) That same day, DHS issued Petitioner a renewed Form I-862, NTA, charging Petitioner with inadmissibility under § 212(a)(7)(A)(i) of the INA because Petitioner is an immigrant "who, at the time of application for admission, is not in possession of a valid unexpired [immigration or travel document]." (2026 NTA, ECF No. 4-4, PageID.68, 71.)

On January 23, 2026, the Detroit Immigration Court ordered that Petitioner be removed to Venezuela. (Order of the Immigration Judge, ECF No. 4-5, PageID.75.) The immigration judge found that Petitioner had not submitted an application for relief from removal. (*Id*.) Petitioner had until February 23, 2026, to appeal that order. (*Id*., PageID.76.) Petitioner submitted an appeal of that order to the Board of Immigration Appeals (BIA) on January 29, 2026, and paid a fee of $1,010. (Payment Receipt, ECF No. 1-6, PageID.35.) In a notice dated February 6, 2026, the BIA rejected Petitioner's appeal because he had not paid the required filing fee of $1,030. (Rejection of Appeal, ECF No. 4-6, PageID.78.) There is no indication in the record before the Court that Petitioner made any further attempt to appeal the order of removal.

On March 5, 2026, Petitioner was transferred to the Port Isabel Detention Facility in Los Fresnos, Texas.[4] (Resp., ECF No. 4, PageID.53.) On March 11, 2026, Petitioner was transferred to the Florence Detention Center in Florence, Arizona. (*Id*.)

---

[4] Respondents contend that at the time this case was filed, Petitioner was no longer detained within the Western District of Michigan, so this Court is not the appropriate venue. (Resp., ECF No. 4, PageID.54.) The petition in this case was filed on March 6, 2026, (Pet., ECF No. 1), and the record before the Court indicates that on March 5, 2026, Petitioner was transferred to Texas. (Transfer Record, ECF No. 4-7, PageID.81.) But the record also shows that Petitioner signed the petition on March 3, 2026, and the record shows that Petitioner was detained at the North Lake Processing Center at that time. (Pet., ECF No. 1, PageID.2; Certificate of Service, ECF No. 1, PageID.4.)

Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir.

## III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV.    Merits Discussion

Respondents presented evidence that indicates Petitioner received an order of removal on January 23, 2026, and that he did not file an appeal—at least not one that the BIA accepted—during the appeal period. (Order of the Immigration Judge, ECF No. 4-5, PageID.75; Rejection of Appeal, ECF No. 4-6, PageID.78.) Respondents argue that Petitioner is subject to an administratively final order of removal and that he is properly detained pursuant to 8 U.S.C. § 1231.[5]

---

2002).  Petitioner dated his application on March 3, 2026, and it was received by the Court on March 6, 2026.  Thus, it must have been handed to prison officials for mailing at some time between those dates.  For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

Therefore, the petition in this case is deemed to have been filed on March 3, 2026, at which time Petitioner was detained at North Lake Processing Center. As such, venue is proper in this Court.

[5] Petitioner contends that Respondents have unlawfully detained Petitioner despite Petitioner's TPS. Based on this, Petitioner seeks immediate release, alleging a violation of 8 U.S.C. § 1254a(d)(4), which provides that if a noncitizen has TPS, then the noncitizen "shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4). As set forth above, Secretary Noem vacated the extension of the 2023 TPS Designation for Venezuela and then signed off on the termination of TPS for Venezuela.

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). "The removal period begins on the latest of the following: (i) the date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id.* § 1231(a)(1)(B)(i)–(iii). An order of removal "shall become final upon the earlier of . . . a determination by the Board of Immigration Appeals affirming such order; or . . . the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." *Id.* § 1101(a)(47)(B)(i)–(ii).

Here, as noted above, Petitioner received an order of removal on January 23, 2026, and he was unable to successfully file an appeal to the BIA during the appeal period. (Order of the Immigration Judge, ECF No. 4-5, PageID.75; Rejection of Appeal, ECF No. 4-6, PageID.78.) Therefore, Petitioner's order of removal became final on February 23, 2026, when the appeal period expired. (Order of the Immigration Judge, ECF No. 4-5, PageID.76); *See* 8 U.S.C.

---

*See supra* note 2. The validity of Secretary Noem's actions regarding TPS for Venezuela is currently being litigated. In October 2025, the United States Supreme Court allowed the termination of TPS for Venezuela to take effect pending the Government's appeal and "disposition of a petition for a writ of certiorari, if such writ is timely sought." *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025). On January 28, 2026, in *National TPS Alliance v. Noem*, 166 F.4th 739 (9th Cir. 2026), the United States Court of Appeals for the Ninth Circuit affirmed the United States District Court for the Northern District of California's finding that Secretary Noem exceeded her statutory authority by revoking TPS protections for Venezuelans and Haitians. At this time, based on the procedural history of *National TPS Alliance v. Noem*, this Ninth Circuit case does not affect the Court's analysis in this habeas action. *Cf. Nat'l TPS All.*, 146 S. Ct. at 24 (allowing the termination of TPS for Venezuelan nationals to take effect pending the Government's appeal). Therefore, the Court will not grant Petitioner's request for immediate release based on Petitioner's prior TPS.

§ 1101(a)(47)(B)(i)–(ii). Furthermore, there is no indication in the record before the Court that Petitioner's removal order is the subject of judicial review, *see id*. § 1231(a)(1)(B)(ii), or that Petitioner was detained or confined for any reason other than under an immigration process after February 23, 2026, *see id*. § 1231(a)(1)(B)(iii). Therefore, Petitioner's removal period began on February 23, 2026, when the appeal period expired and the order of removal became administratively final. *See id*. § 1231(a)(1)(B). Because the 90-day removal period has not expired, Petitioner is properly detained pursuant to § 1231(a).

## <u>Conclusion</u>

For the reasons discussed above, the Court will enter a judgment dismissing Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.


Dated: <u>April 7, 2026</u>     <u>/s/ Hala Y. Jarbou</u>
           HALA Y. JARBOU
           CHIEF UNITED STATES DISTRICT JUDGE